**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **ROBERT CASCI and NATALIE CASCI,**<br>    **Plaintiffs,**<br><br>v.<br><br>**J.P. MORGAN ALTERNATIVE LOAN TRUST 2006-S4, MORTGAGE PASS-THROUGH CERTIFICATES, ALIAS PHH MORTGAGE CORPORATION, AND JOHN DOE, ALIAS**<br>    **Defendants.** | **C.A. NO.: 17-cv-00527-WES-PAS** |

## ANSWER AND COUNTERCLAIMS

### ANSWER

Defendants, U.S. Bank National Association, as Trustee, J.P. Morgan Alternative Loan Trust 2006-S4, Mortgage Pass-Through Certificates[1] ("U.S. Bank Trustee") and PHH Mortgage Corporation ("PHH") respond to Plaintiffs' complaint as follows:

1. Upon information and belief, admitted.

2. Denied. Answering further, the mortgage attached to the complaint as Exhibit A speaks for itself and clearly identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee. Thus, Plaintiffs executed a mortgage to MERS.

3. Denied that the Trust is not an entity. Answering further, an 8-K SEC Filing was submitted for the Trust on May 15, 2006. Answering further, U.S. Bank Trustee is the record holder of the mortgage by assignment. Answering further, legal

---

[1] Plaintiffs have misidentified the proper party for this action by naming the trust itself and not the trustee of the trust, by and through which the trust may sue or be sued. U.S. Bank National Association is the trustee of the subject trust and the mortgagee of record for the mortgage.

authority over the Trust's assets is held by and through its trustee, U.S. Bank Trustee, which Plaintiffs have failed to name as part of this action.

4. Denied. PHH is a corporation organized under the laws of the State of New Jersey. Admitted that PHH is a debt collector and is servicer of Plaintiff's mortgage loan on behalf of U.S. Bank Trustee.

5. The referenced Exhibit B speaks for itself. Answering further, the Court (McConnell, J.) issued a temporary order that barred the November 16, 2017 foreclosure sale from going forward. Answering further, even though the temporary order has expired, no subsequent sale has been noticed.

6. Denied. Answering further, Plaintiffs were sent a Paragraph 22 letter dated July 12, 2017.[2] Answering further, Plaintiffs were sent an acceleration letter, through their counsel of record, dated September 11, 2017 (see Complaint Exhibit E). Answering further, both of these letters were sent by Harmon Law Offices, P.C. as attorneys for the owner of the note or mortgage.

7. Admitted. Answering further, such notice was sent to Plaintiffs dated July 12, 2017.

8. Paragraph 22 of the Plaintiffs' mortgage speaks for itself and no response is required.

9. This paragraph states a legal conclusion to which no response is required. To the extent the paragraph makes any allegations of fact, they are denied.

---

[2] Inexplicably, Plaintiffs ignore that more recent letter and instead only reference a prior Paragraph 22 letter dated February 17, 2017. Plaintiffs' claims all relate to the February 17, 2017 letter, which was superseded by the July 12, 2017 letter.

10. Defendants are without sufficient information to admit or deny the allegation.

11. Denied.  Answering further, the letter <u>did</u> state a specific date to cure by:  March 19, 2017, which Plaintiffs specifically reference in the complaint.

12. Denied.  Answering further, Plaintiffs were sent a notice of acceleration dated September 21, 2017 by Harmon Law Offices, P.C. as attorneys for the assignee of the lender; the notice of acceleration was sent to Plaintiffs' counsel of record.

13. Paragraph 15 of the Plaintiffs' mortgage speaks for itself and no response is required.

14. Paragraph 15 of the Plaintiffs' mortgage speaks for itself and no response is required.

15. Defendants are without sufficient information to admit or deny the allegation.

16. Upon information and belief, admitted that monthly statements were sent to Plaintiffs' home address (see Complaint Exhibit G, not C).

17. Admitted that the superseded February 17, 2017 notice of default was sent to Plaintiffs' home address (see Complaint Exhibit C, not D).

18. Admitted that the notice of sale was sent to Plaintiffs' home address (see Complaint Exhibit B).

19. This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

**COUNT I (BREACH OF CONTRACT)**

20. Defendants repeat their prior responses as if fully set forth herein.

21. This paragraph states a legal conclusion to which no response is required. To the extent the paragraph makes any allegations of fact, they are denied.

22. This paragraph states a legal conclusion to which no response is required. To the extent the paragraph makes any allegations of fact, they are denied.

23. Denied. Answering further, Plaintiffs are themselves in breach of the contract for, inter alia, their ongoing failure to tender monthly payments, their failure to maintain taxes and insurance and their failure to upkeep the property.

24. This paragraph states a legal conclusion to which no response is required. To the extent the paragraph makes any allegations of fact, they are denied.

25. Denied.

WHEREFORE, Defendants request the Court deny Plaintiffs' demands for relief.

### COUNT II (COVENANT OF GOOD FAITH AND FAIR DEALING)

26. Defendants repeat their prior responses as if fully set forth herein.

27. Admitted.

28. Paragraph 22 of the Plaintiffs' mortgage speaks for itself and no response is required.

29. Admitted. Answering further, Plaintiffs were sent: (a) a default letter dated July 12, 2017 pursuant to the terms of the mortgage; (b) an acceleration letter dated September 11, 2017 (Complaint Exhibit E); and (c) a notice of sale (Complaint Exhibit B).

30. There is no paragraph 30 at this point in the complaint.

31. This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

32. This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

33. Denied.

28. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

WHEREFORE, Defendants request the Court deny Plaintiffs' demands for relief.

## COUNT III (INJUNCTIVE RELIEF)

29. [sic] Defendants repeat their prior responses as if fully set forth herein.

30. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

31. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

32. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

33. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

34. [sic] This paragraph states a legal conclusion to which no response is required.  To the extent the paragraph makes any allegations of fact, they are denied.

35. [sic] Upon information and belief, admitted.

35. [sic] This paragraph states a legal conclusion to which no response is required.

    To the extent the paragraph makes any allegations of fact, they are denied.

36. [sic] This paragraph states a legal conclusion to which no response is required.

    To the extent the paragraph makes any allegations of fact, they are denied.

WHEREFORE, Defendants request the Court deny Plaintiffs' demands for relief.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense.** Plaintiffs' claims for relief should be denied because they have failed to name the proper parties for this action.

**Second Affirmative Defense.** Plaintiffs' claims for relief should be denied because they have failed to serve the proper parties for this action.

**Third Affirmative Defense.** To the extent Plaintiffs seek relief for breach of contract, those claims should be denied because Plaintiffs themselves have materially breached the contract.

**Fourth Affirmative Defense**. To the extent Plaintiffs seek relief for breach of the covenant of good faith and fair dealing, those claims should be denied because Plaintiffs themselves have breached, and continue to breach, the covenant of good faith and fair dealing with regard to the mortgage loan contract.

**Fifth Affirmative Defense.** To the extend Plaintiffs seek injunctive relief from the November 15, 2017 foreclosure sale, such sale has already been temporarily enjoined and no further sale date has currently been noticed.

**Sixth Affirmative Defense.**  To the extent Plaintiffs seek to challenge the Trust's authority to foreclose as assignee of the mortgage, Plaintiffs were not party to the mortgage assignments and lack the standing to challenge them.

**Seventh Affirmative Defense.**  To the extent Plaintiffs allege damages relating to the Trust's attempts to foreclose the subject property, any such damages are the result of Plaintiffs' own actions in failing to make their monthly payments or to perform their other obligations under the note and mortgage.

**Eighth Affirmative Defense.**  To the extent Plaintiffs seek equitable relief, any such relief is barred by the doctrine of unclean hands.

**Ninth Affirmative Defense.**  To the extent Plaintiffs assert any claims that were brought or could have been brought in any of their prior Federal or state court actions, those claims are barred by res judicata and/or Rule 41(a)(1)(B).

**Tenth Affirmative Defense.**  To the extent Plaintiffs seek relief against PHH, those claims must fail as PHH is not a party to any contract with Plaintiffs (no breach of contract and no duty of good faith and fair dealing) and PHH does not hold title to the mortgage being foreclosed (no rights to enjoin).

**Eleventh Affirmative Defense**.  Defendants reserve the right to amend or supplement their affirmative defenses as further investigation and discovery may reveal.

        Respectfully submitted,
**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, J.P. MORGAN ALTERNATIVE LOAN TRUST 2006-S4, MORTGAGE PASS-THROUGH CERTIFICATES AND PHH MORTGAGE CORPORATION,**
By their Attorney,

    */s/ Scott C. Owens*
Scott C. Owens, Esq. #8831
Harmon Law Offices, P.C.
150 California Street
Newton, MA 02458
Direct dial: (617) 558-0738

Dated: March 7, 2018    sowens@harmonlaw.com

## COUNTERCLAIMS

Defendant, U.S. Bank Trustee, by its attorney, complains of Plaintiffs as follows:

1. Defendant, Plaintiff in Counterclaim, U.S. Bank National Association, as Trustee, J.P. Morgan Alternative Loan Trust 2006-S4, Mortgage Pass-Through Certificates, is a national banking association and trustee of the Trust as the same has been filed with the SEC.

2. Plaintiffs, Defendants in Counterclaim, Robert J. Casci ("Mr. Casci") and Natalie A. Casci ("Ms. Casci"), are individual and Rhode Island residents with an address of 24 Cedarwood Lane, Hope Valley (Hopkinton), Rhode Island 02832 (the "Property").

3. On September 27, 2005, Ms. Casci executed a Note in favor of PHH Mortgage Corporation ("PHH") in the amount of $280,000.00 ("Note").

4. The Note, among other things, promised that Ms. Casci would repay the $280,000.00 she borrowed, with interests and other costs, in regular monthly installments.

5. On September 27, 2006, Ms. Casci and Mr. Casci granted a mortgage in the amount of $280,000.00 on the Property ("Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for PHH and PHH's successors and assigns.  The Mortgage is recorded in the Hopkinton Land Evidence Records at Book 444, Page 719.

6. The material purpose of the Mortgage was to secure repayment of $280,000.00 in principal, plus interest and other costs, as provided in the Note and to ensure the Cascis' performance of other "covenants and agreements" set forth in the Mortgage, for example, paying property taxes, carrying insurance and maintaining the Property.

7. At some point prior to March 20, 2009, Mr. Casci and Ms. Casci defaulted on their obligations under the Note and Mortgage by, inter alia, failing to make periodic payments and failing to pay property taxes.

8. On March 20, 2009, PHH entered into a loan modification agreement with the Cascis to bring the note and mortgage current.  The first loan modification agreement is recorded in the Hopkinton Land Evidence Records at Book 476, Page 201.

9. At some point March 20, 2009 and November 1, 2010, Mr. Casci and Ms. Casci again defaulted on their obligations under the Note and Mortgage, as modified by the 2009 agreement by, inter alia, failing to make periodic payments and failing to pay property taxes.

10. On April 14, 2010, Mr. and Ms. Casci filed a Chapter 13 Bankruptcy petition (RI BK NO. 10-bk-11598).

11. In the course of the bankruptcy, Mr. Casci and Ms. Casci sought to again modify their obligations under the Note and Mortgage.

12. On November 1, 2010, PHH entered into a second loan modification agreement with the Cascis to again bring the Note and Mortgage current.

13. On March 28, 2011, the Bankruptcy Court approved the second loan modification agreement. The second loan modification agreement is recorded in the Hopkinton Land Evidence Records at Book 492, Page 472.

14. Three (3) days after the Bankruptcy Court approved the November 1, 2010 loan modification agreement, Mr. Casci and Ms. Casci defaulted on the modification by failing to make the April 1, 2011 payment.

15. Mr. Casci and Ms. Casci have not made any other payments since April 1, 2011.

16. Mr. Casci and Ms. Casci have not paid taxes on the Property since April 1, 2011.

17. Upon information and belief, Mr. Casci and Ms. Casci have not maintained the Property as required by the Mortgage, allowing one or more large, smelly dogs to cause significant damage to the premises.

18. On April 11, 2011, Mr. Casci and Ms. Casci converted their Chapter 13 to Chapter 7.

19. On May 9, 2012, Mr. Casci and Ms. Casci assented to a consent order granting U.S. Bank Trustee relief from stay with regard to enforcement of the Note and Mortgage.

20. Despite the terms of the consent order, on December 14, 2012, Mr. Casci and Ms. Casci filed their first of three civil actions intending to deprive U.S. Bank Trustee

the right to enforce the Note and Mortgage or to unfairly delay enforcement. (See, U.S. District Court, District of Rhode Island, 12-cv-00924-JJM-LDA.)

21. The first action was forwarded by this Court (McConnell, J.) to the Special Master's docket for mediation.

22. For over a year, Mr. Casci and Ms. Casci failed to participate in good faith mediation with the Special Master.

23. On January 6, 2014, the Special Master recommended the case be removed from her docket because, "Plaintiffs have either: (a) failed to respond to settlement offers; or (b) failed to provide requested information as directed." (See, 12-cv-00924-JJM-LDA at Document 14.)

24. On January 10, 2014, this Court (McConnell, J.) accepted the Special Master's recommendation and removed the matter from mediation.

25. On March 28, 2014, Mr. Casci and Ms. Casci voluntarily dismissed their first action.

26. Following the dismissal of the first action, U.S. Bank Trustee resumed its efforts to foreclose the Mortgage as Mr. Casci and Ms. Casci had agreed under the consent order.

27. U.S. Bank Trustee, by and through its agents and attorneys, scheduled a foreclosure sale for November 1, 2016.

28. Despite ample advanced notice of the sale date, on November 1, 2016, mere hours before the scheduled sale, Mr. Casci and Ms. Casci filed their second of three actions intended to deprive U.S. Bank Trustee of the right to enforce the note and mortgage. (See, Providence Superior Court, PC-2016-5099.)

29. The second action, much like the first, argued that U.S. Bank Trustee didn't have authority to foreclose and that Mr. Casci and Ms. Casci did not get adequate notice of their default.

30. At the time of the second action, neither Mr. Casci nor Ms. Casci had any intention of paying off the accelerated loan balance or paying to reinstate the loan.

31. At the time of the second action, neither Mr. Casci nor Ms. Casci had any means of paying off the accelerated loan balance or paying to reinstate the loan.

32. On December 6, 2017, Mr. Casci and Ms. Casci dismissed the second action.

33. On July 12, 2017, U.S. Bank Trustee, by and through its mortgage servicer, PHH, sent Mr. Casci and Ms. Casci new demand notices in accordance with Paragraph 22 of the Mortgage.

34. Mr. Casci and Ms. Casci did not cure the default within the time set forth in the July 12, 2017 notice.

35. On September 11, 2017, U.S. Bank Trustee, by and through its attorneys, sent Mr. Casci and Ms. Casci a notice of acceleration of the debt.  The notice was sent to Mr. Casci and Ms. Casci care of their attorney of record, John B. Ennis.

36. Pursuant to Rule 1.4(a) of the Rules of Professional Conduct, Mr. Ennis had a duty to keep Mr. Casci and Ms. Casci informed about the status of the matter.

37. Upon information and belief, consistent with his duty, Mr. Ennis forwarded the September 11, 2017 letter to Mr. Casci and Ms. Casci.[3]

---

[3] Mr. Ennis' treatment of the September 11, 2017 letter may be a material factual issue to be decided in this matter.  U.S. Bank Trustee reserves the right to move to disqualify Mr. Ennis as counsel should it become clear that his testimony as a witness may be required.

38. Subsequent to acceleration, U.S. Bank Trustee, by and through its agents and attorneys, provided and published notice of a foreclosure sale scheduled for November 16, 2017.

39. On November 15, 2017, one day before the scheduled foreclosure sale, Mr. and Ms. Casci filed their third action (the current action) intended to deprive U.S. Bank Trustee of the right to enforce the note and mortgage.

40. At the time of the third action, neither Mr. Casci nor Ms. Casci had any intention of paying off the accelerated loan balance or paying to reinstate the loan.

41. At the time of the second action, neither Mr. Casci nor Ms. Casci had any means of paying off the accelerated loan balance or paying to reinstate the loan.

42. On February 28, 2018, out of an abundance of caution, U.S. Bank Trustee, by and through its attorneys, sent Mr. Casci and Ms. Casci a renewed notice of acceleration of the debt. The renewed notice of acceleration was sent to Mr. Casci and Ms. Casci at the Property address.

## COUNT ONE

### (BREACH OF CONTRACT)

43. U.S. Bank Trustee repeats its prior allegations as if fully set forth herein.

44. Ms. Casci made certain material promises under the Note, as amended, in consideration of the $280,000.00 loan extended to her by U.S. Bank Trustee and/or its predecessor lender/servicer, PHH.

45. U.S. Bank Trustee/PHH performed its material obligation under the Note by providing the $280,000.00 for Ms. Casci's benefit.

46. Ms. Casci has breached one or more of her material obligations under the Note by failing to make monthly payments.

47. Ms. Casci has no legal excuse for having breached her obligations under the Note.

48. Mr. Casci and Ms. Casci made certain promises under the Mortgage, as amended, in consideration of the $280,000.00 loan extended to Ms. Casci by U.S. Bank Trustee/PHH.

49. U.S. Bank Trust/PHH performed its material obligation under the Note and Mortgage by providing $280,000.00.

50. Mr. Casci and Ms. Casci have breached one or more of their material obligations under the Mortgage by failing to make monthly payments, failing to pay property taxes, failing to keep adequate insurance on the Property, and failing to maintain the Property in good condition.

51. Mr. Casci and Ms. Casci have no legal excuse for having breached their obligations under the Mortgage.

52. Mr. and Ms. Casci made certain promises under the two loan modification agreements, in consideration of U.S. Bank Trust/PHH amending the terms of the original Note and Mortgage.

53. U.S. Bank Trust/PHH has performed its material obligations under the two loan modification agreements.

54. Mr. Casci and Ms. Casci have breached one or more of their material obligations under the two loan modification agreements by failing to make the amended monthly payments.

55. Mr. Casci and Ms. Casci have no legal excuse for having breached their obligations under the two loan modification agreements.

56. U.S. Bank Trust/PHH has been damaged as a result of these breaches by Mr. Casci and Ms. Casci.

## COUNT TWO

### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

57. U.S. Bank Trustee repeats its prior allegations as if fully set forth herein.

58. The Note, Mortgage and loan modification agreements between Mr. Casci and Ms. Casci, as borrowers/mortgagors, and U.S. Bank Trust/PHH, as lenders/mortgagees, contained an implied covenant of good faith and fair dealing between the parties so that the material purpose of the contract might be achieved.

59. The *material* purpose of the contract was for U.S. Bank Trustee/PHH to loan Ms. Casci $280,000.00 and for Ms. Casci to repay that money, with interest and costs, over time.

60. As part of the contract, Mr. Casci and Ms. Casci pledged the Property as collateral for the loan, with the understanding that they could lose the Property by foreclosure if they failed to repay the money they owed.

61. Mr. Casci and Ms. Casci have repeatedly failed to meet their payment obligations despite several attempts by U.S. Bank Trustee/PHH to modify the terms of their obligation.

62. Mr. Casci and Ms. Casci have no ability to cure their default, either by paying off the accelerated debt or by reinstating the debt by paying the past due amounts.

63. Mr. Casci and Ms. Casci have already failed to meet their obligations under two loan modifications.

64. Mr. Casci and Ms. Casci applied for a third loan modification, but failed to qualify for any further assistance.

65. Mr. Casci and Ms. Casci have made no efforts to sell the property (either for a full payoff or a short sale) or to surrender the property through a deed in lieu of foreclosure.

66. Mr. Casci and Ms. Casci have enjoyed the benefit of ongoing use and occupancy of the Property since their default on April 1, 2011 without making any payments on the Note, without making any payments for property taxes, without making payments to maintain adequate insurance and without maintaining the condition of the Property.

67. Upon information and belief, there is no equity in the Property and every month that Mr. Casci and Ms. Casci enjoy the use and occupancy of the Property without payment further increases the amount of a debt that they have had discharged in bankruptcy and for which they cannot be held personally responsible.

68. Mr. and Ms. Casci, therefore, have had no incentive whatsoever to advance any of their civil actions, because every delay benefits them to the detriment of U.S. Bank Trustee.

69. This action, like its predecessors, was strategically filed on the eve of foreclosure for the purpose of manufacturing conditions conducive for emergency injunctive relief and to further delay enforcement of the Note and Mortgage, for the benefit of Mr. Casci and Ms. Casci and to the detriment of U.S. Bank Trustee.

70. This action, like its predecessors, complains of nonmaterial, hyper technical and otherwise de minimus "errors" in notice that have no actual or practical impact on the ability of Mr. Casci or Ms. Casci to perform their obligations under the Note or Mortgage or to cure their defaults.

71. In addition to their several specious lawsuits, Mr. Casci and Ms. Casci have engaged in a pattern and practice of sending multiple, repetitive requests for information and notices of error, purportedly pursuant to Regulation X, but in reality intended solely to harass U.S. Bank Trustee/PHH and to further delay any enforcement of the Note and Mortgage.

72. In light of the bankruptcy consent order allowing foreclosure of the Property and in light of the nonmaterial nature of the errors alleged, these "complaints" evidence Mr. Casci's and Ms. Casci's repeated and ongoing breaches of the covenant of good faith and fair dealing.

73. U.S. Bank Trust/PHH has been damaged as a result of these breaches by Mr. Casci and Ms. Casci.

WHEREFORE, U.S. Bank Trustee demands the following relief:

a. Damages against Mr. Casci and Ms. Casci for their breaches of contract relating to the Note, Mortgage and two loan modification agreements to the extent the same were not previously discharged in bankruptcy;

b. Damages against Mr. Casci and Ms. Casci for their violations of the covenant of good faith and fair dealing relating to the Note, Mortgage and two loan modification agreements to the extent the same were not previously discharged in bankruptcy;

c. Dismissal of Mr. Casci's and Ms. Casci's claims against U.S. Bank Trustee and PHH;

d. Denial of Mr. Casci's and Ms. Casci's claims for damages, attorneys' fees, costs and any other relief;

e. A declaration that the July 12, 2017 demand letter and the September 11, 2017 acceleration (or February 28, 2018 renewed acceleration) were materially sufficient and adequately delivered such that foreclosure by U.S. Bank Trustee may proceed in accordance with Rhode Island general law;

f. Award U.S. Bank Trustee and PHH any and all attorneys' fees and costs to which it is entitled, if any; and,

g. Such other or alternative relief as the Court deems fair and reasonable.

    Respectfully submitted,
**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, J.P. MORGAN ALTERNATIVE LOAN TRUST 2006-S4, MORTGAGE PASS-THROUGH CERTIFICATES AND PHH MORTGAGE CORPORATION,**
By their Attorney,

 /s/ Scott C. Owens
Scott C. Owens, Esq. #8831
Harmon Law Offices, P.C.
150 California Street
Newton, MA 02458
Direct dial: (617) 558-0738
sowens@harmonlaw.com

Dated: March 7, 2018

## **CERTIFICATION**

  I, Scott C. Owens, hereby certify that on this 7th day of March, 2018, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

              /s/ *Scott C. Owens*
              Scott C. Owens, Esq.